THOMAS HENSON ET AL. *vs.* RICHARD E. HILL ET AL.

EQUITY. No. 6806.

{ Decided October 27, 1884.
{ Justices MAC ARTHUR, HAGNER and JAMES sitting.

The scrutiny with which courts of equity regard a deed between parties holding a confidential relationship to each other, proceeds upon the principle that before and at the time of the conveyance, the grantor holds such a relation to the grantees as to place him in contemplation of law mentally under his control and domination ; and it is important in making out this confidential relation, that it should be shown to have preceded the whole transaction. Proof that it was contemporaneous with and grew out of the transaction itself is not sufficient.

THE CASE is stated in the opinion.

S. S. HENKLE for plaintiffs.

T. F. MILLER for defendants.

Mr. Justice JAMES delivered the opinion of the court.

The bill in this case states that on the 28th of April, 1879, Ellen Jones died seized of certain property in this city, having devised it to the Israel Methodist Church ; that the will was inoperative, because it was made within a period of thirty days before her death. That on the 2d day of January, 1877, more than two years before her death, she was induced and persuaded by the defendant Richard E. Hill to execute and deliver to him a deed of these lots for a consideration of ten dollars, while the lots were worth $1,600 or $1,700. That on the same day, Hill and his wife executed a deed reconveying to her, Ellen Jones, a life estate. The bill then alleges that the deed was without any consideration in money, property or relationship, and was procured by undue artifice and fraud.

It is further stated that Ellen Jones, not long before her death, employed counsel to draw a bill in equity, with a view to having this conveyance nullified ; that she had signed it and sworn to it, but died before it could be filed. Then the complainants reiterate the charge as made in that bill, and their charges so reiterated make these points: That at the time when Ellen Jones made this deed she

was prostrated by a severe spell of sickness, and was in a low and feeble state of mind and body, and in no condition to transact business at any time with discretion and judgment, and that the defendant Hill, by artifice and fraud, and by affecting to take an unusual interest in her welfare, prevailed upon her to make a deed. That they are informed and believe, that she, Ellen Jones, was ignorant of the nature, effect and object of the deed to Hill, and also of the conveyance by Hill of the life estate back to her, and that at the time of the execution of these deeds, it was never her intention to part with the absolute title to her property.

The next allegation has been assumed in the argument as charging another ground for relief, and it is substantially in these words: That at the time of the execution of the deed she, Ellen Jones, was a little behind in her taxes, and owed some other debts, and Hill suggested and advised her to allow him to borrow for her some $200, to be secured by a deed of trust, which he succeeded in doing, and the deed of trust was presented to her for execution on the same day the others were executed, and it was signed by her when she was so sick that she hardly knew what she was about. That William Ward was made trustee in this deed of trust; that two hundred dollars was borrowed and never has been paid, and is a subsisting lien upon the property. The plaintiffs infer and believe that the money raised went into Hill's hands. He paid some of the taxes and other small debts, sent her two loads of coal, some wood, and paid her a small proportion of the money, how much is not known, but he appropriated, it is alleged, more or less to his own use, and should be required to report and produce vouchers for what he expended on her account. These allegations were used in the argument as making the point that he stood in the confidential relation to her of agent.

This case, therefore, turns upon two questions. First, whether there was active fraud; and, secondly, whether any such confidential relation existed as to call for the enforcement in a court of equity of those obligations which arise out of such a relation.

In the first place, as to the question of fraud, it is stated that Ellen Jones was at the time of this transaction sick and feeble, and really incapable of understanding the transaction, and that, as a matter of fact, she did not understand it. Among all the witnesses who have been examined, nobody was present at that transaction except Mr. Robert Ward, an examiner of titles and a conveyancer at that time. He is a lawyer of intelligence, and testifies that, being called upon to prepare the papers, he explained to Mrs. Jones the effect of making a will and the effect of making a deed. We think it is quite clear, from his testimony, that the grantor was capable of knowing what she was about, and capable of understanding perfectly the difference between a transaction which she could revoke at any time, and a transaction which was irrevocable.

[His honor then read the testimony upon this point, and continuing, said:]

We do not find anything in this testimony which sustains the charge of active fraud or undue influence.

It is contended, however, that *she* thought so, because she filed a bill afterwards—more than two years afterwards—for the purpose of revoking this whole transaction, in which she made that charge of fraud. But that could only prove the attitude she took two years afterwards. It does not at all prove the fact that she failed to comprehend the transaction when she performed it, or the fact that she did not intend to make it two years before that. That was her allegation under circumstances of dissatisfaction.

But it is alleged that Hill bore to her the confidential relation of agent. And the doctrine is invoked that a conveyance, a gift, between a principal and agent, is to be watched with the utmost scrutiny; it was claimed that such a deed was *prima facie* void, and that it lies upon the agent to show that the utmost fairness was exercised, and that the donor or grantor had independent and disinterested advice. The principle with regard to these cases of confidential relationship is this: That before and at the time of the conveyance, the grantor holds such a relation to the grantee

as to place him in contemplation of law mentally under his control and domination. It is important, therefore, in making out this confidential relation, that it should be shown to have preceded the whole transaction. But here it was the very thing itself. Here was a little loan of $200, effected simultaneously with the execution of the deed. No earlier agency is shown; none is alleged. All there is of it is that, in the very act of determining to give him this property, either by will or deed, she employed him to clear up the taxes, by borrowing some money for her upon the property. The agency is not antecedent to the transaction, but it is part of it, and contemporaneous with it.

But, after all, who was really the agent? Hill appears to have gone to a lawyer, and the result was that the lawyer was brought to Mrs. Jones. The lawyer, Mr. Ward, effected this loan. He states in his deposition that they told him that they wanted to raise some money to pay off the taxes, and he said he would raise it for them; which, he says, he did. It is shown distinctly, therefore, that it was Mr. Ward, and not Hill, who effected the loan. All that Hill did in the matter was to inform Mr. Ward that she wanted to raise some money.

We do not find, then, that even in that single transaction there was any such agency as would invoke the principle sought to be enforced. But whatever the relation was, it is plain that it was not antecedent. She did not enter into this transaction with Hill surrounded by that atmosphere—under the influences of an already existing relation—but it was one that was created contemporaneously with it.

If we look through the numerous cases cited by Hare & Wallace upon this subject, it will be found that in all of them there was a prior relation which the law presumed to have controlled the mind of the grantor.

It was also pointed out to us that the consideration of the conveyance was ten dollars, and it was contended that that was inadequate, and that it was not admissible to prove a different kind of consideration than that named in the deed; that when a money consideration is stated, it was not admis-

sible for Hill to prove that he had rendered her services. There was an attempt to do that, but that was not necessary. We take the deed just as it stands. It was, it is true, a deed upon a consideration of ten dollars, but that was a nominal consideration, for if this conveyance was anything, it was a gift.

It is not necessary to go outside of the deed to determine what its character was, but if we should refer to anything else, it would be to the fact that her intention was just before that to devise the property to Hill; that this deed was a substitute, and avowedly a substitute. There was no intention whatever to sell the land for its value. So that the sufficiency of the consideration does not become one of the questions in the case.

But it is said that in the case of a gift there must appear to have been independent advice—disinterested advice. The reply to that is, that the whole matter is shown by the testimony to have been explained to the grantor, not by the grantee, but by counsel whom she paid, and who was disinterested and independent, taking nothing by any of these transactions except his fee.

With regard to her state of mind towards her relations. Could the circumstances have had any effect in turning her away from them? She told Mr. Ward, at the time of the transaction, that she did not intend her relatives to have anything to do with the property, and in the end she gave this very property to the church; so that from the beginning to the end she, at least, intended that these relatives should take nothing. It is plain that she was not turned aside from them by any advice that Hill gave.

We think, then, in conclusion, that the confidential relation alleged to have existed between the grantor and grantee did not precede the transaction in which this lady undertook to give this property to Hill. And if it is necessary to go further than that, that there is no proof of any such relation having existed at any time, it is all denied by the answer, and there is no proof in that direction on the part of the complainant.

We affirm the decree of the court below.